UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATASHA DORCHY,

        Plaintiff,                              Case No. 1:21-cv-10078

v.                                               Honorable Thomas L. Ludington
                                                  United States District Judge

FIFTH THIRD BANK,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before this Court upon Defendant's Motion for Summary Judgment. ECF No. 23. For the reasons stated hereafter, Defendant's Motion will be denied.

**I.**

Defendant Fifth Third Bank has employed Plaintiff Natasha Dorchy since 2007. ECF No. 26 at PageID.344. Plaintiff was the putative victim of a domestic altercation with her spouse, which she reported to the police and Child Protective Services (CPS). *See* ECF No. 23 at PageID.205–09. Plaintiff also reported the incident to Defendant, her employer, as required by company policy. *See id.* Defendant placed Plaintiff on administrative leave, conducted an internal investigation and an external assessment, then terminated her employment in October 2020. *See id.* at PageID. 205–12. In January 2021, Plaintiff brought a complaint alleging that Defendant's termination of Plaintiff's employment violated the Michigan Whistleblower's Protection Act, MICH. COMP. LAWS § 15.361 *et seq. See* ECF No. 1; ECF No. 23 at PageID.189.

In October 2021, Defendant filed a motion for summary judgment, to which Plaintiff responded. *See* ECF Nos. 23; 25.

## II.

A motion for summary judgment should be granted if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant has the initial burden of "identifying those portions of the [record that] it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence and draw all reasonable inferences in favor of the nonmovant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986); *see Lossia v. Flagstar Bancorp, Inc.*, 895 F.3d 423, 428 (6th Cir. 2018).

The burden then shifts to the nonmovant, who must set out specific facts showing "a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 250 (citation omitted). The nonmovant must show more than "some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Indeed, the "mere existence of a scintilla of evidence" in support of the nonmovant does not establish a genuine issue of material fact. *Liberty Lobby*, 477 U.S. at 252.

Summary judgment will be granted if the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. But summary judgment will be denied "[i]f there are . . . 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir.1992) (citation omitted).

In a diversity case like this, the court must apply "the substantive law of the state in which it sits," in this case of course, the law of the State of Michigan. *BP Expl. & Oil Co. v. Maint. Servs., Inc.*, 313 F.3d 936, 942 (6th Cir. 2002).

### III.

To establish a prima facie case under § 2 of the Michigan Whistleblower's Protection Act (WPA), Plaintiff must show that:

> (1) she was engaged in protected activity as defined by the act, (2) the defendant discharged her, and (3) a causal connection exists between the protected activity and the discharge.

*Smith v. Gentiva Health Servs. (USA) Inc.*, 296 F. Supp. 2d 758, 762 (E.D. Mich. 2003) (citing *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 212 (Mich. 1998)).

### A.

The first element is met if Plaintiff reported an actual or suspected violation of law to a public body, which includes law enforcement. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 629 (6th Cir. 2013) (citing MICH. COMP. LAWS § 15.361(d)(iv)). Notably, this case does not involve the usual circumstance in which an employer terminates an employee who reported the conduct of an employer or a coworker. Even so, "the violation or suspected violation at issue need not be one committed by the employer or one of the plaintiff's coworkers" to be protected. *McNeill-Marks v. Midmichigan Med. Ctr.-Gratiot*, 891 N.W.2d 528, 536 (Mich. Ct. App. 2016). Indeed, Michigan courts have "liberally construed" Michigan's WPA "to cover violations of the law by a third person." *Chandler v. Dowell Schlumberger Inc.*, 572 N.W.2d 210, 215 (Mich. 1998); *see also Kimmelman v. Heather Downs Mgmt. Ltd.*, 753 N.W.2d 265, 265, 270 (Mich. Ct. App. 2008) (holding that participation in a criminal investigation and court action was "protected under the WPA, irrespective of whether the criminal investigation had any connection to [plaintiff's]

employer or to [plaintiff's] employment," because "absolutely nothing, express or implied, in the plain wording of the statute . . . limits [the WPA's] applicability to violations of law by the employer or to investigations involving the employer"). Therefore, the WPA covers Plaintiff's report of domestic violence to the police.[1]

Defendant admits that Plaintiff called the police on her spouse to report domestic violence. *See* ECF No. 23 at PageID.205 ("Plaintiff . . . grabbed her daughter's phone to call 9-1-1. The police arrived and arrested [him]." (citation omitted)). Because Plaintiff was engaged in a protected activity, she meets the first element.

**B.**

The second element is satisfied when the employer takes an adverse employment action against the employee. *Millar v. Constr. Code Auth.*, 912 N.W.2d 521, 525 (Mich. 2018); *see Wilcoxon v. Minn. Mining & Mfg. Co.*, 597 N.W.2d 250, 258 (Mich. Ct. App. 1999) ("[T]he action must be materially adverse in that it is more than 'mere inconvenience or an alteration of job responsibilities.'" (citation omitted)). Although an exhaustive list does not exist, "typical" adverse employment actions include: "a termination in employment, a demotion evidenced by a decrease

---

[1] About four million women become victims of domestic violence each year. Nicole Buonocore Porter, *Victimizing the Abused?: Is Termination the Solution When Domestic Violence Comes to Work?*, 12 MICH. J. GENDER & L. 275, 281 (2006); *see also* BELL HOOKS, FEMINISM IS FOR EVERYBODY 61–62 (2000) ("[T]he term domestic violence . . . suggests it emerges in an intimate context that is private and somehow less threatening, less brutal, than the violence that takes place outside the home. This is not so, since more women are beaten and murdered in the home than on the outside."). To mitigate the effects on employee-victims' ability to find and maintain employment, more than two-thirds of states have passed legislation "to protect a domestic violence victim's right to work and increase her safety in the workplace." Deseriee A. Kennedy, *Using the NFL as a Model? Considering Zero Tolerance in the Workplace for Batterers*, 45 U. BALT. L. REV. 293, 303–04 (2016). Indeed, most of the States also provide employee-victims with time away from work to recuperate. Michigan, however, grants time off only to participate in the oft-necessary judicial proceedings. *See* MICH. COMP. LAWS § 780.762 and 780.790 (allowing victims time off to testify in response to a subpoena or request from a prosecuting attorney).

in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation."[2] *Peña v. Ingham Cnty. Rd. Comm'n*, 660 N.W.2d 351, 358 (Mich. Ct. App. 2003) (citations omitted).

Defendant admits that it placed Plaintiff on paid leave and later terminated her after she informed Defendant that she reported illegal activity to the police and CPS, which Defendant's company policy required. *See* ECF No. 23 at PageID.207, 211. Because Defendant terminated Plaintiff's employment, she satisfies the second element.

### C.

The third element requires a causal connection. *West v. Gen. Motors Corp.*, 665 N.W.2d 468, 472 (Mich. 2003). If a reasonable juror viewing the facts in the light most favorable to Plaintiff could reasonably conclude that Defendant terminated Plaintiff because she reported unlawful conduct to the police or CPS, then Defendant's Motion must be denied. Temporal proximity alone is insufficient to establish causation. *Walters v. Pride Ambulance Co.*, 683 F. Supp. 2d 580, 590 (W.D. Mich. 2010) (citing *Taylor v. Modern Eng'g, Inc.*, 653 N.W.2d 625, 630 (Mich. Ct. App. 2002)), *as amended* (Apr. 8, 2010). But there is more than mere proximity here, as Defendant admits.

Defendant began corporate investigations of Plaintiff after she reported to Defendant the problems with her spouse. *See* ECF No. 23 at PageID.209–11 (discussing "Fifth Third's Consultation with the Threat Assessment Group"). And as Defendant's Employee Relations Consultant, Jenean Ferree, acknowledges in her affidavit, Defendant terminated Plaintiff after "[c]onsidering all of the information gathered by corporate investigations and the expert

---

[2] Placing an employee on paid leave might also constitute an adverse employment action under the Michigan Whistleblower's Protection Act. But this Court need not reach that question yet.

assessment." ECF No. 23-2 at PageID.228. Fatal to its motion for summary judgment, Defendant included and considered the information that it gathered about Plaintiff's reports to the police and CPS. Consequently, viewing Ms. Ferree's statement in the light most favorable to Plaintiff, a reasonable juror could find that Defendant pretextually suspended Plaintiff with pay and later terminated her employment because she called the police, CPS, or both.

Further, a reasonable juror could understand placing Plaintiff on paid leave as a preemptive removal of Plaintiff from the workplace in anticipation of terminating her: What easier way to terminate an employee than while they are not at work? *E.g.,* FRIDAY (New Line Productions 1995) (premising the protagonist's tumultuous Friday on getting fired on his day off over the phone).

Moreover, under Defendant's company policy, employees must report instances of domestic violence to law enforcement, and then "immediately report the details" to Defendant. *See* ECF No. 23 at PageID.197–98. Defendant's policy also provides that Defendant "investigates and takes all reported incidents . . . seriously and evaluates whether preventative action is necessary. . . . up to and including termination of employment." *See id.* at PageID.198. In other words, Defendant requires its employees to notify law enforcement if they are victims of domestic violence, and then inform Defendant so it can evaluate whether it should terminate their employment. As indicated, a reasonable juror could find a genuine issue of material fact as to whether company policy encouraged Defendant to terminate Plaintiff for engaging in protected activity.[3]

---

[3] Defendant's Motion relies on a "workplace safety" policy as the reason it terminated Plaintiff. The purpose of Defendant's company policy is "to strictly prohibit workplace violence." ECF No. 23-2 at PageID.233. The policy relevantly defines "workplace violence" as "threats or acts of violence or behavior that causes a reasonable fear or intimidation response" which extends to conduct "[o]ff Fifth Third premises . . . where there is a reasonable basis for believing that violence may occur against the targeted employee or others in the workplace." *Id.* at PageID.233. Presumably, Defendant's policy is a progeny of the Michigan Occupational Safety and Health Act

For these reasons, Defendant's Motion for Summary Judgment will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 23, is **DENIED**.

Dated: December 17, 2021                    s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

---

("MIOSHA"), MICH. COMP. LAWS § 408.1001 *et seq.* The broad objective of MIOSHA is "to provide all employees with a work site free from recognized hazards." *Hottmann v. Hottmann*, 572 N.W.2d 259, 262 (Mich. Ct. App. 1997) (quoting *Barker Bros. Const. v. Bureau of Safety & Regul.*, 536 N.W.2d 845, 849 (Mich. Ct. App. 1995)). But "MIOSHA does not create new common-law or statutory rights, duties, or liabilities of employers and employees." *Id.* (citing MICH. COMP. LAWS § 408.1002(2)). Yet reporting illegal conduct to MIOSHA is a protected activity under the WPA. *See Stegall v. Res. Tech. Corp.*, No. 341197, 2019 WL 4671167, at *4 (Mich. Ct. App. Sept. 24, 2019) (per curiam). Although neither party has directly addressed MIOSHA's seeming conflict with the WPA in this case, the parties will likely need to address the issue either through motion practice or in instructions to the jury at trial. Fortunately, the Supreme Court has at least opined on a similar issue in the context of the federal OSHA. *See Lawson v. FMR LLC*, 571 U.S. 429, 453 (2014) ("But it would thwart Congress' dominant aim if contractors were taken off the hook for retaliating against their whistleblowing employees, just to avoid the unlikely prospect that babysitters, nannies, gardeners, and the like will flood OSHA with § 1514A complaints.").