UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATASHA DORCHY,

                Plaintiff,                Case No. 1:21-cv-10078

v.                                        Honorable Thomas L. Ludington
                                                  United States District Judge

FIFTH THIRD BANK,

                Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTIONS IN LIMINE**

Plaintiff's employment with Defendant was terminated, she alleges, because she reported to her employer that she was a victim of domestic violence. She has filed two motions in limine in anticipation of trial. ECF Nos. 36; 37. Both will be granted.

**I.**

Until recently, Defendant Fifth Third Bank employed Plaintiff Natasha Dorchy since 2007. ECF No. 26 at PageID.344. Plaintiff was the putative victim of a domestic altercation with her spouse, which she reported to the police and Child Protective Services (CPS). *See* ECF No. 23 at PageID.205–09. Plaintiff also reported the incident to Defendant, her employer, as required by company policy. *See id.* Defendant placed Plaintiff on administrative leave, conducted an internal investigation, paid for an external assessment, and then terminated her employment in October 2020. *See id.* at PageID. 205–12. In January 2021, Plaintiff brought a complaint alleging that Defendant's termination of Plaintiff's employment violated the Michigan Whistleblowers' Protection Act, MICH. COMP. LAWS § 15.361 *et seq. See* ECF No. 1; ECF No. 23 at PageID.189.

In October 2021, Defendant filed a motion for summary judgment, to which Plaintiff responded. *See* ECF Nos. 23; 25; 26. Defendant's motion for summary judgment was denied. *See*

*generally Dorchy v. Fifth Third Bank*, No. 1:21-CV-10078, 2021 WL 5989040 (E.D. Mich. Dec. 17, 2021); ECF No. 28.

On January 3, 2022, Defendant filed a notice of its intent to call six lay witnesses and one expert witness. ECF No. 31. Among the lay witnesses, Defendant identified Mr. Bill Irwin of Threat Assessment Group ("TAG"), an outside consultant to Fifth Third Bank.

Fifteen days later, Plaintiff filed two motions in limine. One motion seeks to exclude evidence of a severance offer Defendant made to Plaintiff. ECF No. 36. The other motion seeks to exclude opinion testimony of Bill Erwin as well as limit his lay testimony to nonhearsay matters of which he has personal knowledge. ECF No. 37. Plaintiff's papers reflect that she sought but did not obtain Defendant's concurrence. Yet Defendant filed no responses.

Plaintiff's motion to bar introduction of the severance offer into evidence will be granted *infra* Part II, and her motion to exclude Bill Erwin's testimony will be granted *infra* Part III.

**II.**

Plaintiff's first motion in limine seeks to exclude a separation agreement under Federal Rule of Evidence 408. ECF No. 36. The nine-page-long "Separation Agreement and General Release of All Claims" (the "Agreement") offers a payment of $16,000 in exchange for the release of all Plaintiff's claims; on October 15, 2020, it was forwarded to Plaintiff by Defendant's employee, Ms. Jenean Ferree. ECF No. 36-1 at PageID.779–88.

Rule 408 reads in full:

> (a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
> (1) furnishing, promising, or offering--or accepting, promising to accept, or offering to accept--a valuable consideration in compromising or attempting to compromise the claim; and
> (2) conduct or a statement made during compromise negotiations about the claim--except when offered in a criminal case and when the negotiations

> related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

FED. R. EVID. 408.

No doubt, Defendant's "separation agreement and general release of all claims" is a "furnishing, promising, or offering" under Rule 408(a)(1). A separation agreement that a defendant-employer sent shortly after a plaintiff-employee engaged in the conduct alleged to be the reason for termination is "clearly an offer of compromise within the meaning of Rule 408." *See Macsherry v. Sparrows Point, LLC*, 973 F.3d 212, 223 (4th Cir. 2020) (quoting *Weems v. Tyson Foods, Inc.*, 665 F.3d 958, 965 (8th Cir. 2011)). Indeed, in the Agreement, Defendant offered to pay Plaintiff in exchange for her "*promises*, covenants, and agreements," as described in the Agreement. ECF No. 36-1 at PageID.780 (emphasis added).

The Agreement is not admissible to prove the validity or amount of the claim or to impeach Plaintiff by prior inconsistent testimony. FED. R. EVID. 408(a). Further, though there are exceptions to Rule 408(a) in Rule 408(b), Defendant has made no effort to establish whether or how any such exception applies to the Agreement.

For these reasons, Plaintiff's motion in limine to exclude the Agreement, ECF No. 36, will be granted, and the Agreement will therefore not be admissible into evidence at the trial.

**III.**

Plaintiff's second motion in limine seeks to exclude the testimony of Bill Erwin—who Defendant identified as only a fact witness in its disclosures—under Federal Rule of Evidence 701. ECF No. 37. Because Defendant did not disclose Bill Erwin's testimony as an expert, the admissibility of his testimony will be analyzed only as a lay witness. *See* FED. R. CIV. P. 26(a)(2).

Rule 701 establishes the admissibility of lay-witness testimony and reads in full:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
> (a) rationally based on the witness's perception;
> (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
> (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

FED. R. EVID. 701.

In 2000, Congress amended Rule 701 "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." FED. R. EVID. 701 advisory committee's note to 2000 amendment. To that end, Congress intended to "ensure[] that a party will not evade the expert witness disclosure requirements set forth in Fed.R.Civ.P. 26 and Fed.R.Crim.P. 16 by simply calling an expert witness in the guise of a layperson." *Id.*

Bill Irwin's lay testimony must be excluded from trial because it (1) is expert testimony submitted under the guise of lay testimony; (2) is not rooted in personal knowledge; and (3) would not be helpful to the trier of fact.

**A.**

Lay witnesses may testify to facts and limited opinions but may not invade the realms of experts. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) ("[L]ay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." (quoting *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007))); *see also Jewett v. Am. Nat'l Prop. & Cas. Ins.*, No. 19-CV-02015-CMA-STV, 2021 WL 791500, at *2 (D. Colo. Mar. 1, 2021) ("A

party cannot offer *de facto* expert testimony under the guise of presenting lay witness testimony." (citing *James River Ins. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011))).

According to Defendant, "Bill Irwin of TAG, [is] an expert in workplace threat assessment." ECF No. 23 at PageID.209. Indeed, in deciding to terminate Plaintiff, Defendant "arrange[d] for a consultation with a threat assessment expert who review[ed] the facts and provide[d] advice to a multidisciplinary workplace violence team within Fifth Third." *Id.* at PageID.199; *see also id.* at PageID.209 ("The purpose of the call was for Mr. Irwin to provide expert advice about the risk of violence posed to the workplace and assist [Defendant's] attorney in rendering legal advice with respect to the legal risks associated with [Defendant's] response to situations of potential violence.").

Moreover, Bill Irwin completed an expert report on the circumstances of this case. Indeed, he indicated that he conducted a "workplace risk assessment" to produce "a written report containing [his] observations and recommendations," which Defendant calls an "expert analysis." ECF Nos. 23-2 at PageID.224; 23-7 at PageID.276, 278; *see also* ECF No. 26-10 at PageID.642–45 (Irwin Report). And Defendant admittedly relied on Bill Irwin's "expert assessment" to terminate Plaintiff's employment. ECF No. 23-2 at PageID.228.

Federal courts overwhelmingly recognize expert testimony on workplace violence. *See, e.g.*, *BHC Nw. Psychiatric Hosp., LLC v. Sec'y of Lab.*, 951 F.3d 558, 561–63 (D.C. Cir. 2020) (reviewing an ALJ's qualification of a workplace-violence expert; *Ward v. Bechtel Corp.*, 102 F.3d 199, 203 (5th Cir. 1997) (recognizing the "hiring two workplace violence experts to conduct a risk assessment"); *Jones v. L.F. Grp.*, No. 3:18CV91-GHD-RP, 2021 WL 4163565, at *2–3 (N.D. Miss. Sept. 13, 2021) (admitting evaluations of "the hiring and pre-employment screening of employees regarding preventing workplace violence" as "expert testimony in the field of human

resources management"); *United States v. Wells*, No. 3:13-CR-00008-SLG, 2019 WL 3229912, at *2–4 (D. Alaska July 17, 2019) (qualifying "a forensic psychiatrist and criminologist" to give expert testimony "regarding workplace violence"); *Garrow v. Norcross Safety Prods., LLC*, No. 08-4066, 2010 WL 2044941, at *7 (C.D. Ill. May 24, 2010) (determining the weight of an expert report on "workplace violence policy"); *In re Welding Fume Prod. Liab. Litig.*, No. 1:03-CV-17000, 2005 WL 1868046, at *9–10 (N.D. Ohio Aug. 8, 2005) (admitting the testimony of two "experts . . . whom specialize in . . . the identification, evaluation, and control of health risks in the workplace"); *cf. Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst.*, 448 U.S. 607, 645 (1980) (opining on the impact of "[e]xpert testimony that a substance . . . poses some risk of serious harm" in the workplace).

As indicated, Bill Irwin's testimony would not be lay testimony based upon "a process of reasoning familiar in everyday life." *See Harris*, 627 F.3d at 240; *White*, 492 F.3d at 401. Rather, his testimony would be expert testimony "based on scientific, technical, or other specialized knowledge." FED. R. EVID. 701(c); *see also Hirst v. Inverness Hotel Corp.*, 544 F.3d 221, 227 (3d Cir. 2008).

Indeed, as Mr. Irwin put it, his risk assessment was based on "extensive experience interviewing and investigating in a wide range of sensitive and often complex violent crime, white-collar crime, public corruption, and domestic and international terrorism cases"—topics far beyond the ken of a jury. ECF No. 23-7 at PageID.275; *see also Kroll v. Carnival Corp.*, No. 19-23017-CIV, 2020 WL 4793444, at *7 (S.D. Fla. Aug. 17, 2020) (finding that if a witness "acts like a direct expert, appears like a direct expert, writes like a direct expert, and provides expert opinions which do not rebut the opponent's expert because they are direct, affirmative opinions, then he must be a direct expert")); C. MICHAEL BOWERS, FORENSIC TESTIMONY: SCIENCE, LAW AND

EXPERT EVIDENCE 126 (2014) (noting the "saying that applies to some expert witnesses: 'If it quacks like a duck, walks like a duck, and smells like a duck, then it must be a duck'").

But Defendant did not provide an expert disclosure for Bill Irwin and did not call him as an expert witness.

For these reasons, Bill Erwin's anticipated testimony would be *de facto* expert testimony and is therefore inadmissible lay testimony under Rule 701(c). *See White*, 492 F.3d at 401 ("District courts must be especially vigilant in evaluating the admissibility of expert testimony where . . . a [witness] is called on to testify as a fact witness but also functions as an expert." (quoting *United States v. Perkins*, 470 F.3d 150, 155 (4th Cir.2006))); *Jewett v. Am. Nat'l Prop. & Cas. Ins.*, No. 19-CV-02015-CMA-STV, 2021 WL 791500, at *3 (D. Colo. Mar. 1, 2021).

B.

Lay witnesses may only testify to facts about which they have personal knowledge. FED. R. EVID. 602; FED. R. EVID. 701(a). Testimony based on "statements made by others . . . . serves to facilitate the application of Rules 701 and 702." Dale A. Nance, *Conditional Probative Value and the Reconstruction of the Federal Rules of Evidence*, 94 MICH. L. REV. 419, 440–41 (1995). In applying Rule 701, "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *United States v. Valdez-Reyes*, 165 F. App'x 387, 392 (6th Cir. 2006) (unpublished) (internal quotations and citation omitted).

Bill Irwin has no personal knowledge of the factual circumstances in this case. He did not personally interview Plaintiff, her husband, her children, or anyone else involved in the case, and he has never been to the Fifth Third Bank where Plaintiff worked. To make his "expert analysis," he relied on only information Defendant provided to him. *See* ECF No. 23-7 at PageID.277 ("I

attended a call with members of [Defendant's] multidisciplinary team."); *id.* ("[W]e discussed the facts of the case."); *id.* ("I found that the summary report and the consultation provided the facts necessary to make a risk assessment."). In this way, the only facts to which Bill Irwin might properly testify are about his conversations with Defendant. But Defendant has not responded to that effect, so this Court will not assume as much. Even so, Defendant will call two other participants in that conversation, so Bill Irwin's anticipated testimony about that conversation is not necessary. *Compare* ECF No. 23-7 at PageID.277, *with* ECF No. 31 at PageID.754.

For lacking personal knowledge, Bill Irwin's opinion testimony is inadmissible at trial. *See* FED. R. EVID. 602; FED. R. EVID. 701(a).

### C.

To the extent Bill Irwin would testify that Defendant terminated Plaintiff's employment for a nonretaliatory reason, it is inadmissible.

Defendant's rationale for terminating Plaintiff's employment is the ultimate issue the jury must decide in this case. Unless well founded on personal knowledge, lay witnesses may not testify to an ultimate issue of fact; that is the realm of experts. *See* FED. R. EVID. 701; FED. R. EVID. 704; *United States v. Tolbert*, 8 F. App'x 372, 379 (6th Cir. 2001) (unpublished).

Because Bill Irwin is a lay witness without personal knowledge, his opinion testimony to any ultimate issues of fact in this case must be excluded from the trial. *Mitroff v. Xomox Corp.*, 797 F.2d 271, 274–76 (6th Cir. 1986) ("[S]eldom will be the case when a lay opinion on an ultimate issue will meet the test of being helpful to the trier of fact since the jury's opinion is as good as the witness' and the witness turns into little more than an 'oath helper.'" (citing FED. R. EVID. 705)).

In a case substantially similar to this one, the plaintiff sued a Virgin Island resort after she was raped. *See generally Hirst v. Inverness Hotel Corp.*, 544 F.3d 221 (3d Cir. 2008). The district

court allowed the defendant's corporate president to give lay testimony about whether adequate security would have prevented the rape, even though he never visited the resort and "learned everything about [the plaintiff's] rape second-hand through either his attorney or . . . the vice president . . . in charge of the entire Virgin Islands operation." *Id.* at 226 (internal quotations omitted). The Third Circuit Court of Appeals reversed the verdict in favor of the resort due to the improper admission of this lay testimony, reasoning that:

> Yet, in the absence of personal perception, an opinion as to whether [the plaintiff's] rape could have been prevented would have had to depend on, *inter alia*, technical or specialized knowledge of the various security measures [the defendant] could/should have taken. Not having been qualified as an expert in security (or in any other area for that matter), [the corporate president] should not have been permitted to offer such an opinion.

*Id.* at 228. Similarly, Bill Irwin's lay testimony is not only solely based on specialized knowledge but also completely devoid of personal knowledge.

Consequently, Plaintiff's Motion in Limine to Bar Testimony of Bill Erwin, ECF No. 37, will be granted, and he will be excluded as a witness from the trial.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Motion in Limine to Bar Evidence of Severance Offer, ECF No. 36, is **GRANTED**.

Further, it is **ORDERED** that the Separation Agreement and General Release of All Claims is **EXCLUDED** from the trial.

Further, it is **ORDERED** that Plaintiff's Motion in Limine to Bar Testimony of Bill Irwin, ECF No. 37, is **GRANTED**. Bill Irwin may not testify as an expert witness at the trial.

Dated: February 8, 2022            s/Thomas L. Ludington
                                   THOMAS L. LUDINGTON
                                   United States District Judge