UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

NATASHA DORCHY,

               Plaintiff,                       Case No. 1:21-cv-10078

v.                                        Honorable Thomas L. Ludington
                                              United States District Judge

FIFTH THIRD BANK,

               Defendant.

_____/

**OPINON AND ORDER DENYING DEFENDANT'S MOTION FOR
RECONSIDERATION AND MODIFYING IN PART FEBRUARY 8, 2022 ORDER**

Defendant seeks reconsideration of this Court's Order granting Plaintiff's Motion in
Limine. ECF No. 40. As explained hereafter, Defendant's Motion for Reconsideration will be
denied, but the February 8, 2022 Order will be clarified.

**I.**

Until recently, Defendant Fifth Third Bank employed Plaintiff Natasha Dorchy since 2007.
ECF No. 26 at PageID.344. Plaintiff was the putative victim of a domestic altercation with her
spouse, which she reported to the police and Child Protective Services (CPS). *See* ECF No. 23 at
PageID.205–09. Plaintiff later reported the incident to Defendant, her employer, as required by
company policy. *See id.* Defendant placed Plaintiff on administrative leave, conducted an internal
investigation, paid for an external assessment, and then terminated her employment in October
2020. *See id.* at PageID. 205–12.

In January 2021, Plaintiff brought a complaint alleging that Defendant terminated her
employment in violation of the Michigan Whistleblowers' Protection Act (MWPA), MICH. COMP.
LAWS § 15.361 *et seq. See* ECF No. 1; ECF No. 23 at PageID.189. Specifically, Plaintiff contends

that reporting her husband's conduct to law enforcement was a "protected activity" under the MWPA, and that a "causal connection" exists between the protected activity and Defendant's termination of Plaintiff's employment. *See* ECF No. 1 at PageID.4.

Soon after the Complaint was filed, Defendant filed a motion for summary judgment, which was denied because "a reasonable juror could find that Defendant pretextually suspended Plaintiff with pay and later terminated her employment because she called the police, CPS, or both." *Dorchy v. Fifth Third Bank*, No. 1:21-CV-10078, 2021 WL 5989040, at *3 (E.D. Mich. Dec. 17, 2021); ECF Nos. 23; 25; 26; 28.

In January 2022, Defendant filed a notice of its intent to call six lay witnesses and one expert witness. ECF No. 31. The expert witness is William Kowalski, an employee of Rehmann Corporate Investigative Services. *Id.* at PageID.755. To what he might testify is unknown.

Among its lay witnesses, Defendant identified Bill Irwin, an employee of Threat Assessment Group ("TAG"), an outside consultant to Fifth Third Bank. *Id.* According to TAG, its employees are "experts" who "are available for on-site consultation, interviews, coordination with mental health or law enforcement personnel, or high-risk negotiations, discipline, or terminations." Threat Assessment Group, *Case Consulting* (2021), https://www.taginc.com/violence-prevention-2 [https://perma.cc/8A8S-BC8R]. And TAG's experts offer "[w]ritten reports, second opinions, affidavits, declarations, and expert testimony . . . on request." *Id.*

Two weeks later, Plaintiff filed two motions in limine. One motion sought to exclude evidence of a severance offer that Defendant made to Plaintiff. ECF No. 36. The other motion sought to exclude Bill Irwin's opinion testimony and limit his lay testimony to nonhearsay matters of which he has personal knowledge. ECF No. 37.

Defendant did not respond to either motion, and both motions were granted. *See Dorchy v. Fifth Third Bank*, No. 1:21-CV-10078, 2022 WL 385166 (E.D. Mich. Feb. 8, 2022). Bill Irwin's testimony was excluded, because Defendant did not intend to seek opinion testimony from Bill Irwin and, as Plaintiff emphasized, knew nothing about Defendant or her termination beyond hearsay reports from Defendant's employees. Defendant's lack of response, of course, meant that this Court did not know what lay testimony Defendant might seek to elicit from Bill Irwin. Without Defendant's explanation on any possible lay testimony, Bill Irwin was excluded from testifying at trial.

Defendant has filed a motion for reconsideration, requesting that this Court reverse the Order that excluded Bill Irwin's testimony. *See* ECF No. 40. Plaintiff has responded that this Court properly excluded Bill Irwin's testimony. *See* ECF Nos. 41; 42.

## II.

Defendant asserts that this Court misapplied the legal standard for motions in limine in excluding the lay testimony of Bill Irwin.

## A.

Lay witnesses may only testify to facts about which they have personal knowledge. FED. R. EVID. 602 and 701(a). Testimony based on "statements made by others. . . . serves to facilitate the application of Rules 701 and 702." Dale A. Nance, *Conditional Probative Value and the Reconstruction of the Federal Rules of Evidence*, 94 MICH. L. REV. 419, 440–41 (1995). In applying Rule 701, "the modern trend among courts favors the admission of opinion testimony, provided that it is well founded on personal knowledge and susceptible to specific cross-examination." *United States v. Valdez-Reyes*, 165 F. App'x 387, 392 (6th Cir. 2006) (unpublished) (internal quotations and citation omitted).

- 3 -

Lay witnesses may not invade the realms of experts. *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 240 (6th Cir. 2010) ("[L]ay testimony results from a process of reasoning familiar in everyday life, whereas an expert's testimony results from a process of reasoning which can be mastered only by specialists in the field." (quoting *United States v. White*, 492 F.3d 380, 401 (6th Cir. 2007))); *see also Jewett v. Am. Nat'l Prop. & Cas. Ins.*, No. 19-CV-02015-CMA-STV, 2021 WL 791500, at *2 (D. Colo. Mar. 1, 2021) ("A party cannot offer *de facto* expert testimony under the guise of presenting lay witness testimony." (citing James *River Ins. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216 (10th Cir. 2011))).

Experts provide testimony that is beyond the ken of a normal juror. *E.g.*, Suzanne Kessler, Romana DeSalvo & Sara Ellis, *Bringing Blurred Lines into Focus*, 3 BELMONT L. REV. 103, 116 (2016) (noting that experts were admitted to "explain why [two songs] are alike, and then the jury hear[d] it for themselves" in *Williams v. Bridgeport Music, Inc.*, No. LA CV13-06004 JAK, 2014 WL 7877773, at *1 (C.D. Cal. Oct. 30, 2014)) (statement of Romana DeSalvo).

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Rule 702 assigns the district court "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand"—a kind of "gatekeeping role." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In this role, district courts consider several factors that the *Daubert* Court identified, including whether the expert's methods

are testable and subject to peer review. *Id.* at 593–94; *see also United States v. Bonds*, 12 F.3d 540, 558 (6th Cir. 1993) (identifying and discussing the so-called "*Daubert* factors"); *see also* FED. R. EVID. 703 (explaining the bases upon which expert testimony may be based to be admissible).

**B.**

Defendant's Motion for Reconsideration addresses an issue raised by this Court in response to Defendant's Motion for Summary Judgment. *See Dorchy v. Fifth Third Bank*, No. 1:21-CV-10078, 2021 WL 5989040, at *4 n.3 (E.D. Mich. Dec. 17, 2021). That issue is the legal intersection between an employer's obligation to protect the workplace from potential acts of violence on the one hand and not terminating an employee for reporting acts of violence to law enforcement on the other hand. *See id.* In probing that issue, this Court found little legal authority. But now Defendant appears to explain that the question is not one of policy and law; rather, the suggestion is that it is a question of fact governed by the proximate-cause element of the MWPA. Defendant explains that Bill Irwin's lay testimony is relevant because it demonstrates "Defendant's response to the threat, and whether [Defendant] acted out of animus towards Plaintiff." ECF No. 40 at PageID.821.

This Court may clarify an order *sua sponte* to "correct a mistake arising from oversight or omission whenever one is found in a[n] . . . order, or other part of the record." FED. R. CIV. P. 60(a); *see, e.g.*, *Mathews v. ALC Partner, Inc.*, No. 08-CV-10636, 2009 WL 10680524, at *2 (E.D. Mich. Oct. 27, 2009). Similarly, this Court may clarify a prior order on a party's motion for "mistake" or "any other reason that justifies relief." *See* FED. R. CIV. P. 60(b)(1), (6). And it is well established that public policy favors adjudication of cases on their merits. *See Foman v. Davis*, 371 U.S. 178, 181 (1962) ("It is . . . contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.").

- 5 -

Under Michigan's jury instruction for causation in MWPA cases, Plaintiff must prove that one of her protected activities was "one of the motives or reasons" that Defendant terminated her employment or put her on paid leave in anticipation of that termination. Mich. M. Civ. JI 107.03. Indeed, her protected activities need not "be the only reason, or even the main reason, but [they do] have to be one of the reasons that made a difference in [Defendant's] decision." *Id.*

Although Defendant filed its Motion for Reconsideration 22 days late under Local Rule 7.1(e), it offers five grounds for Bill Irwin's testimony as relevant to proximate causation under the MWPA. *See* ECF No. 40 at PageID.818–19. This Court will address each in turn.

## 1.

First, Defendant intends to examine Bill Irwin to explain "[t]hat his employer, TAG, has an ongoing consultancy relationship with [Defendant] regarding workplace violence." ECF No. 40 at PageID.818.

In addition to being relevant to causation, such testimony meets all three lay-testimony criteria. The relationship between TAG and Defendant will be "rationally based [Bill Irwin's] perception," because he works for TAG and spoke to Defendant while employed there. FED. R. EVID. 701(a). That statement will be "helpful . . . to determining a fact in issue," because TAG's opinion likely influenced Defendant's decision. FED. R. EVID. 701(b). And the fact that Defendant had a relationship with an outside contractor is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c).

Accordingly, Bill Irwin may testify "[t]hat his employer, TAG, has an ongoing consultancy relationship with [Defendant] regarding workplace violence." ECF No. 40 at PageID.818.

**2.**

Second, Defendant intends to have Bill Irwin testify that "as a result of that relationship, he consulted with [Defendant's] multi-disciplinary workplace risk assessment team on September 4, 2020, regarding a potential workplace violence situation in Defendant's Gaylord, Michigan branch." ECF No. 40 at PageID.819.

In addition to being relevant to causation, such testimony meets all three lay-testimony criteria. The fact that Bill Irwin consulted Defendant will be "rationally based on [Bill Irwin's] perception." FED. R. EVID. 701(a). The existence of the consultation will be "helpful . . . to determining a fact in issue" because, again, it likely influenced Defendant. FED. R. EVID. 701(b). And the fact that the consultation took place is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c). But the details of the consultation would be based on specialized knowledge.

Bill Irwin may testify that "as a result of that relationship, he consulted with [Defendant's] multidisciplinary workplace risk assessment team on September 4, 2020, regarding a potential workplace violence situation in Defendant's Gaylord, Michigan branch." ECF No. 40 at PageID.819.

**3.**

Third, Defendant intends to question Bill Irwin concerning whether "[d]uring that [September 4, 2020] conference call, he provided his assessment to Defendant regarding the potential risks posed by Mr. Hill-Dorchy and suggested options to Defendant." ECF No. 40 at PageID.819.

In addition to being relevant to causation, such testimony meets all three lay-testimony criteria. The fact that Bill Irwin provided an assessment to Defendant will be "rationally based

[Bill Irwin's] perception," because he made the statements and was present at the meeting. FED. R. EVID. 701(a). The existence of the assessment will be "helpful . . . to determining a fact in issue," because TAG's opinion likely influenced Defendant's decisionmakers. FED. R. EVID. 701(b). And the fact that an outside contractor provided an assessment is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c). But, like the consultation, the details of the assessment would be based on specialized knowledge.

Bill Irwin may testify that "[d]uring that [September 4, 2020] conference call, he provided his assessment to Defendant regarding the potential risks posed by Mr. Hill-Dorchy and suggested options to Defendant." ECF No. 40 at PageID.819.

### 4.

Fourth, Bill Irwin intends to testify that he "confirmed his observations and recommendations in writing, which he provided to Defendant." ECF No. 40 at PageID.819.

In addition to being relevant to causation, such testimony meets all three lay-testimony criteria. The fact that Bill Irwin created an expert report and gave it to Defendant will be "rationally based [Bill Irwin's] perception," because he made the report and gave it to Defendant. FED. R. EVID. 701(a). The existence of the expert report will be "helpful . . . to determining a fact in issue," because Bill Irwin's expert likely influenced Defendant's assessment of the potential for workplace violence. FED. R. EVID. 701(b). And the facts that the expert report exists and that Bill Irwin gave it to Defendant are "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c). But, like the consultation and assessment, the details of the expert report would be based on specialized knowledge.

Therefore, Bill Irwin may testify that he "confirmed his observations and recommendations in writing, which he provided to Defendant." ECF No. 40 at PageID.819.

**5.**

Finally, Bill Irwin intends to testify that "[d]uring that call, he perceived, based on what he heard, no hostility or animus from [Defendant] on the call regarding Plaintiff's filing of a police report or her cooperation with law enforcement." ECF No. 40 at PageID.819.

In addition to being relevant to causation, such testimony meets all three lay-testimony criteria. Although potentially speculative, the fact that Bill Irwin perceived Defendant as not hostile about a police report is "rationally based [Bill Irwin's] perception," because the perception is his. FED. R. EVID. 701(a). Bill Irwin's perception of Defendant during the consultation will be "helpful . . . to determining a fact in issue," because Defendant's lack of animus about a protected activity makes it less likely that Defendant terminated Plaintiff's employment because of a protect activity. FED. R. EVID. 701(b). And Bill Irwin's perception of Defendant's temperament during their conversations is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." FED. R. EVID. 701(c).

Therefore, Bill Irwin may testify that "[d]uring that call, he perceived, based on what he heard, no hostility or animus from the [Defendant] on the call regarding Plaintiff's filing of a police report or her cooperation with law enforcement." ECF No. 40 at PageID.819.

**C.**

Because all five of Defendant's proposed questions elicit lay testimony, Bill Irwin may testify as a lay witness. But he may not testify about whether maintaining Plaintiff's employment presented a risk of violence to Defendant's employees—even though Defendant's employees may testify about what Bill Irwin told them in order to show the effect that his statements had on Defendant's employees.

**III.**

Accordingly, it is **ORDERED** that Plaintiff's Motion for Reconsideration, ECF No. 40, is **DENIED**.

Further it is **ORDERED** that this Court's prior order is **CLARIFIED** according to this Opinion and Order. Bill Irwin may testify that (1) Defendant often consults TAG for risk assessments; (2) Bill Irwin conducted such an assessment; (3) Bill Irwin gave a verbal assessment to Defendant; (4) Bill Irwin gave a written assessment to Defendant; and (5) Bill Irwin did not perceive hostility or animus from Defendant regarding Plaintiff's protected activities.

Dated: March 31, 2022                          s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge